### 9627

### READ v. ATLANTIC COAST LINE R. CO. *ET AL.*

#### (91 S. E. 378.)

CARRIERS—CARRIAGE OF PASSENGERS—EJECTION OF PASSENGER—TENDER OF FARE—OPPORTUNITY TO PURCHASE TICKET.—Evidence that the ticket office was closed at a time 35 minutes before the train actually departed, without evidence that it remained closed from that time until the departure of the train, is not sufficient to warrant a finding that the plaintiff, in an action for his ejection from the train, had no reasonable opportunity to purchase a ticket before boarding the train.

Before MEMMINGER, J., Monck's Corner, March, 1916. Reversed.

Action by Frank Read against the Atlantic Coast Line Railroad Company and another. Judgment for the plaintiff against the named defendant, and that defendant appeals.

The complaint in the case was as follows:

The plaintiff above named, complaining of the defendants above named, alleges:

(1) That the Atlantic Coast Line Railroad Company is now, and was at the times hereinafter mentioned, a corporation duly organized and chartered by and under the laws of the States of South Carolina, North Carolina, and Virginia, and, as such, owns and operates lines of railroads in the State of South Carolina, having agents and officers therein, in the transaction of business.

(2) That W. W. Blount is now, and was at the times hereinafter mentioned, a citizen of the State of South Carolina, and resides at Charleston in said State.

(3) That Frank Read, the plaintiff above named, is now, and was at the times hereinafter mentioned, a citizen of the State of South Carolina, residing in the county of Berkeley.

(4) That heretofore, on the 10th day of April, 1914, the plaintiff above named presented himself at the ticket office of the defendant above named for the purpose of purchasing a ticket good for transportation on train No. 79, from Monck's Corner to Otranto. That Otranto is a station on the lines of said road, between Monck's Corner and Charleston, S. C. That the plaintiff was unable to secure a ticket when he applied for the same, and that he left the depot and returned in a short while, and the the train was then approaching the station at Monck's Corner, and that he called the attention of W. W. Blount, conductor on said train, to the fact that he had been unable to purchase a ticket and asked for a few moments in which to do so. That he thereupon undertook to purchase from the agent of the defendant company at Monck's Corner a ticket to Otranto, and, while he was in the act of purchasing said ticket, the said conductor gave signal for the train on which he desired to take passage to depart, and he, while the said train was in motion, found it necessary to enter the coach for colored passengers and pass through said coach into the proper coach.

(5) That, as the said train pulled away from Monck's Corner, the plaintiff above named was approached by the conductor of said train, W. W. Blount, who demanded his fare, and that the plaintiff handed to the conductor 40 cents in lawful money, the same being the fare from Monck's Corner to Otranto, and a ticket from Otranto to Charleston, which said ticket was accepted and punched by the said conductor.

And the plaintiff further alleges: That the said conductor, after having accepted the amount hereinabove named and the ticket hereinbefore referred to, demanded the sum of 15 cents, and the plaintiff declined and refused to pay such

further fare; the amount which he had already paid being the fare from Monck's Corner to Otranto, and the ticket so presented and accepted from Otranto to Charleston being the necessary fare from Otranto to Charleston. That the plaintiff informed the conductor that he had attempted to purchase a ticket at Monck's Corner, but was unable to do so, as the office was closed, and that he presented himself at the ticket office a reasonable time before the arrival of the train for such purpose.

(6) That the conductor was rude to plaintiff, spoke to him in an angry, discourteous, and abusive manner, and raised his hand as if to strike plaintiff, and informed plaintiff and shouted at plaintiff that, unless he paid the additional 15 cents he would eject and expel him from the train and, without giving to plaintiff an opportunity to explain or discuss the situation, took hold of plaintiff in a rough, rude, and vindictive manner, tearing the clothing of the plaintiff, and jerked him around forcibly and violently, bruised and otherwise ill treated plaintiff, held him up to public scorn, ridicule, and criticism; the coach in which plaintiff was riding being occupied by many passengers, both male and female.

(7) That while plaintiff was being thus dragged around in said passenger coach of the defendant company, by the said conductor, a friend and relative of plaintiff, in order to save plaintiff from further punishment, offered to pay to the said conductor such sum as was demanded for the transportation of plaintiff to his destination, and the said conductor thereupon demanded payment of the further sum of 75 cents (which said sum was in addition to the amount already paid), which said sum of 75 cents was paid by said friend and relative (Joe Goldberg) and accepted by the said conductor; the said sum of 75 cents being the fare from Monck's Corner to Charleston.

(8) That by reason of the negligent, vicious, wanton, wilful, and reckless acts of the defendants above named, in

ill treating, assaulting, bruising, and humiliating plaintiff on train on which he was a passenger, he has been damaged in the sum of $25,000.

Wherefore, the plaintiff demands judgment against the defendants in the sum of $25,000 and costs of this action.

The answer of the Atlantic Coast Line Railroad Company was as follows:

The defendant, Atlantic Coast Line Railroad Company, answering the complaint herein, says:

First. It denies each and every allegation contained in the said complaint not hereinafter specifically admitted or denied.

Second. Answering the first paragraph of said complaint, the defendant says that it is a corporation organized and chartered by and under the laws of the State of Virginia.

Third. It admits the allegations contained in the second and third paragraphs.

Fourth. Answering the fourth paragraph, the defendant admits that Monck's Corner and Otranto are stations on defendant's line of railroad; but, on information and belief, denies the remaining allegations of said paragraph.

Fifth. Answering the allegations contained in the fifth paragraph, the defendant says that the plaintiff, at the time mentioned in said paragraph, boarded defendant's train without a ticket and tendered to defendant's conductor, W. W. Blount, a sum of money which was 10 cents less than the legal cash fare from Monck's Corner to Otranto, offering the same for his transportation between said points. And defendant further admits that demand was made by the said conductor upon the plaintiff for the said sum of 10 cents, which demand was refused by the plaintiff. And, upon information and belief, the defendant denies the remaining allegations of said paragraph five.

Sixth. Answering the allegations contained in the sixth, seventh, and eighth paragraphs of the complaint, the defendant denies the same.

And having fully answered said complaint, defendant prays that the same may be dismissed, with costs.

*Messrs. Mordecai & Gadsden & Rutledge* and *Octavus Cohen,* for appellant, cite: *As to duty of passenger:* 97 S. C. 153; 101. S. C. 11. *Conductor's conduct:* 90 S. C. 517.

*Messrs. E. J. Dennis* and *W. Turner Logan,* for respondent, cite: *As to refusal of nonsuit:* 78 S. C. 251; 80 S. C. 545; 67 S. C. 129; 90 S. C. 316; 86 S. C. 274; 50 S. C. 37; 86 S. C. 306; 60 S. C. 18; 99 S. C. 42. *Wrong of carrier:* 74 S. C. 377; 94 S. C. 415.

February 17, 1917.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for actual and punitive damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendants, in attempting to eject him, with force and violence, from the train upon which he was riding as a passenger, after he had tendered to the conductor the amount of fare allowed by law. The defendants, in justification of their acts, pleaded that the amount of fare tendered was insufficient, and that only such force was used as was necessary to eject the plaintiff from the train. The facts will more fully appear, by reference to the complaint and answer, which will be reported, except the formal parts thereof. The defendants made a motion for a nonsuit, also for the direction of a verdict; but both motions were refused. The jury rendered a verdict in favor of the plaintiff, against the Atlantic Coast Line Railroad Company, for $5,000; and it made a motion for a new trial, whereupon the Court ordered that a new trial be granted, unless the plaintiff would remit upon the record $2,500 of the verdict, which remission was accordingly made.

The first question that will be considered is whether there was any testimony tending to show that the plaintiff was denied a reasonable time, within which to purchase a ticket, by reason of the fact that the ticket office was closed.

The regular time for opening the ticket office was 12:05 o'clock; the train was scheduled to arrive at 12:33 o'clock; on the day in question, the train was delayed and failed to arrive until 12:53 o'clock. The plaintiff testified that he went to the ticket office to buy a ticket, about 35 minutes before the train actually arrived, and that the ticket office was then closed; that the bulletin showed the train was 20 minutes late, and he then had knowledge of such fact; that he returned to his store, which was near by, and did not go again to the station until the train was approaching; and that it was too late to buy a ticket. The plaintiff did not introduce any testimony whatever to show that the ticket office remained closed during any part of the time after he returned to his store and before the arrival of the train.

It is true there was testimony tending to show that the plaintiff went to the ticket office about 35 minutes before the train actually arrived, and that the office was then closed; but this did not tend to show that it remained closed thereafter until the train arrived; and the only reasonable inference from the testimony is that the failure of the plaintiff to buy a ticket was not the direct and proximate result of a wrongful act on the part of the railroad company, but because he did not use due diligence.

The motion for nonsuit should have been granted, and the judgment is, accordingly, reversed.